IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NAVIGATORS INSURANCE COMPANY,

    Plaintiff,

    v.

SUNNY HAMLIN,

    Defendant.

_____

Case No. 6:14-cv-00196-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff Navigators Insurance Company ("Navigators") and Defendant Sunny Hamlin ("Hamlin") each filed motions for summary judgment to determine the availability of insurance coverage for a claim by Hamlin (the "Hamlin Claim") against Navigators' insured, Michael A. Blackburn ("Blackburn"). Because Blackburn did not act within the scope of his professional services, and because the Personal Profit Exclusion excludes coverage for the Hamlin Claim, Navigators' motion for summary judgment, ECF No. 16, is GRANTED.

1 – OPINION AND ORDER

## BACKGROUND

In 2008, Hamlin hired Blackburn, a certified public accountant ("CPA"), as part of Hamlin's divorce from her husband of over 30 years. Hamlin and Blackburn remained friends after the divorce proceedings concluded, and Hamlin continued to use Blackburn's services for her tax returns. In 2009, Hamlin contacted Blackburn to see if she could earn a higher return on her money by investing with him. Between April 2009 and June 2011, Hamlin loaned Blackburn $660,000, secured by six separate promissory notes, at progressively higher rates of interest. Hamlin's understanding was that Blackburn would invest the money with local businessmen who needed short-term loans,[1] but Blackburn never invested any of Hamlin's money with a third party. Blackburn eventually defaulted on the promissory notes, and on December 18, 2012, Hamlin filed the Hamlin Claim against Blackburn alleging breach of contract and breach of fiduciary duty. Shortly after being deposed in September 2013, Blackburn committed suicide.

On February 5, 2014, Navigators filed this declaratory judgment action seeking a declaration that it had no duty to defend or indemnify Blackburn in connection with the Hamlin Claim. Hamlin filed a cross-motion for summary judgment seeking a declaration that the professional liability insurance policy provides coverage for the Hamlin Claim. The parties submitted a joint stipulation of facts for purposes of summary judgment. *See* ECF No. 17.

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v.*

---

[1] *See* ECF No. 19; Ex. N, Hamlin Deposition, p. 17. "Q: . . . You were telling me that Mr. Blackburn told you that he had someone else—that there was some third party who was an investor that the money could be given to and then a big return generated and given back to you? A: That's what I understood."

2 – OPINION AND ORDER

*Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

This case turns on the interpretation of an insurance policy. Therefore, I must ascertain the intention of the parties to the policy. *Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Oregon*, 313 Or. 464, 469 (1992). I first turn to the language of the policy. *Id.* (citing ORS 742.016 (except in cases not relevant here, "every contract of insurance shall be construed according to the terms and conditions of the policy.")). If the terms and conditions of the policy are ambiguous following a plain meaning review, the court considers the terms and conditions in the particular context used and then, if necessary, in the context of the policy as a whole. *Id.* at 470. If any ambiguity remains—meaning if two or more plausible interpretations of the term remain—the court resolves the ambiguity against the drafter and in favor of the insured. *Id.* Courts examine the policy language from the perspective of the ordinary purchaser of insurance. *N. Pac. Ins. Co., v. Am. Mfrs. Mut. Ins. Co.*, 200 Or. App. 473, 478 (2005).

Under Oregon law, the initial burden of proving coverage is on the insured. *Employers Ins. of Wausau v. Tektronix, Inc.*, 211 Or. App. 485, 509 (2007). Conversely, the insurer has the burden of proof to show any loss is excluded. *Stanford v. Am. Guar. Life Ins. Co.*, 280 Or. 525,

3 – OPINION AND ORDER

527 (1977). "[A]ny ambiguity in an exclusionary clause is strictly construed against the insurer." *Id*.

The policy at issue states that Navigators "will pay on behalf of the Insured all sums in excess of the deductible that the Insured shall become legally obligated to pay . . . by reason of an act or omission, including personal injury, in the performance of professional services by the Insured[.]" ECF No. 1; Ex. 1, Sec. I.A. Because Blackburn's conduct fell outside the scope of his professional services, Hamlin cannot satisfy her burden to show that the policy provides coverage for the Hamlin Claim. Even if Blackburn acted in the performance of professional services, the Personal Profit Exclusion absolves Navigators of the duty to indemnify or defend Blackburn in connection with the Hamlin Claim.[2]

## I. DUTY TO INDEMNIFY

Under Oregon insurance law, the duty to indemnify is independent of the duty to defend. *Ledford v. Gutoski,* 319 Or. 397, 403 (1994). Liability for indemnity, unlike liability under the duty to defend, derives from factual determinations separate from the allegations in the complaint. *Am. States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 890 (9th Cir. 2003). As a result, Navigators could still have a duty to indemnify even if it did not have a duty to defend. *Id*. In order for the duty to indemnify to arise, the insured must be liable for harm that is covered by the policy. *Ledford*, 319 Or. at 405.

---

[2] Navigators raised two additional arguments as to why the policy precludes coverage. This Court rejects the Claims Made and Reported argument because Blackburn did not officially accept service until January 2, 2013, which was during the same policy period that he reported the Hamlin Claim to Navigators. This Court also concludes the Breach of Contract exclusion is inapplicable because Blackburn did not assume the contractual liability of a third party. *See Allstate Ins. Co. v. Hudler*, 2011 WL 1498370, at *10-11 (D.Or. Feb. 25, 2011).

4 – OPINION AND ORDER

### A. Professional Services

The policy defines professional services as "Services in the practice of accounting in any of the following capacities: 1. Accountant or accounting consultant; 2. Investment Adviser . . . [.]"[3] Investment Adviser is specifically defined as:

> "[A]ny Insured who provides financial, economic or investment advice, including personal financial planning and investment management services, provided that the Investment Adviser does not include any Insured while involved in the bartering, purchase or sale of securities, insurance products or other investment products."

ECF No. 1; Ex. 1, Sec. III.Q (emphasis added). When Blackburn sold Hamlin the six promissory notes, he did not act as an accountant or accounting consultant, nor did Blackburn act as Hamlin's Investment Adviser because he was involved in the purchase or sale of investment products. Therefore, Hamlin cannot satisfy her burden to prove that Navigators' policy provides coverage for Blackburn's conduct.

Looking at the plain language, the policy does not define "investment product." When terms are not specifically defined, Oregon courts often look to the dictionary definition for the meaning the parties would naturally have intended. *Comcast Corp. v. Dept. of Rev.*, 356 Or. 282, 295-96 (2014). "Invest" is defined as "to commit (money) in order to earn a financial return . . . to make an investment[.]" *Merriam Webster's Collegiate Dictionary* 616 (10th ed. 1996). In this case, Hamlin committed $660,000 to Blackburn, secured by six promissory notes, in order to gain a financial return in the form of interest payments.

Hamlin insists that even if a promissory note is an investment product, the "purchase or sale" of a promissory note does not encompass the initial transfer of the note from Blackburn to Hamlin. However, the plain language does not support this interpretation. "Sale" is defined as

---

[3] The five other categories of "professional services" are not at issue in this case.

5 – OPINION AND ORDER

"the transfer of ownership of and title to property from one person to another for a price[,]" and "purchase" is defined as "to obtain by paying money or its equivalent[.]" *Id*. at 1031, 948. In this case, Blackburn created six separate promissory notes, then he transferred them to Hamlin in exchange for $660,000. Hamlin obtained the promissory notes by paying money. Using standard definitions, Blackburn sold $660,000 worth of investment products to Hamlin by transferring six promissory notes to her in exchange for money.

To the extent the terms and conditions of the policy are still ambiguous after reviewing the plain language, the court considers the terms and conditions in the particular context used and then, if necessary, in the context of the policy as a whole. *Hoffman*, 313 Or. at 470. Within the definition of "Investment Adviser," the policy describes services such as "investment *advice*," "personal financial *planning*," and "investment management *services*." ECF No. 1; Ex. 1, Sec. III.Q (emphasis added). These functions are in keeping with the nature of an accountant's work, which consists of advising clients and facilitating transactions. If Blackburn had negligently advised Hamlin to purchase promissory notes from an insolvent third party, then Navigators would likely have a duty to indemnify Blackburn. In this case, however, the only advice Blackburn gave Hamlin with regard to the Hamlin Claim was while Blackburn was involved in the sale of investment products, which the policy does not cover.

Hamlin places great emphasis on the fact that she had a fiduciary relationship with Blackburn, but this focus is misplaced. The Ninth Circuit has repeatedly held that the proper inquiry to determine what conduct falls under "professional services" is the nature of the act itself, not the status of the party performing the act or the status of the party harmed:

> Something more than an act flowing from mere employment or vocation is essential. . . . A 'professional' act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or

6 – OPINION AND ORDER

> skill[.] . . . In determining whether a particular act is of a professional nature or a 'professional service' we must look not to the title or character of the party performing the act, but to the act itself.

*PMI Mortg. Ins. Co. v. Am. Int'l Speciality Lines Ins. Co.*, 394 F.3d 761, 765 (9th Cir. 2005) (quoting *Bank of California, N.A. v. Opie*, 663 F.2d 977, 981 (9th Cir. 1981)).

In a case with facts similar to the Hamlin Claim, the Ninth Circuit held that an insured who solicited funds from his clients, with whom he had a fiduciary relationship, did not act within the scope of his "professional services" as defined by the malpractice insurance contract. *See Gen. Acc. Ins. Co. v. Namesnik*, 790 F.2d 1397 (1986). In *Namesnik*, the insured was an attorney and a licensed CPA. *Id.* at 1398. The insured had a fiduciary relationship with his clients, for whom he routinely performed tax returns. *Id.* The insured solicited funds from his clients for them to invest in corporations and partnerships that the insured operated, resulting in losses in the millions of dollars. *Id.* The insured's clients in *Namesnik* argued that the insured was acting as their "financial advisor," or as their "accountant and financial advisor." *Id.* at 1399-1400.

Citing *Opie*, the court noted that the existence of an attorney-client relationship was not dispositive as to whether the conduct in dispute was part of the insured's "professional services" as defined by the malpractice insurance contract. *Id.* at 1399. The court then concluded that despite the fiduciary relationship, the uncontroverted evidence demonstrated that the insured had acted as a business agent and not an attorney, therefore his conduct fell outside the scope of "professional services." *Id.* at 1400.

In this case, Blackburn also had a fiduciary relationship with Hamlin, and, like the insured in *Namesnik*, Blackburn routinely performed Hamlin's tax returns. Similar to the insured in *Namesnik*, Blackburn solicited funds from Hamlin for her to invest with him, resulting in

7 – OPINION AND ORDER

substantial losses. Like the clients in *Namesnik*, Hamlin argues that Blackburn owed her a fiduciary duty as her accountant and investment adviser. However, as was the case with the insured in *Namesnik*, Blackburn's actions were not part of his "professional services" as defined in his accounting malpractice insurance policy.

Hamlin has not carried her burden to prove the policy provides coverage, so Navigators has no duty to indemnify Blackburn in connection with the Hamlin Claim.

### B. Personal Profit Exclusion

Under the "EXCLUSIONS" section, the policy states that Navigators will not defend or pay any claim "Based on or arising out of the Insured gaining, in fact, any personal profit or advantage to which the Insured is not legally entitled[.]" ECF No. 1; Ex. 1, Sec. IV.K. Because Blackburn gained a profit or advantage of $660,000 that, upon default, he was no longer legally entitled to, Navigators has no duty to indemnify Blackburn in connection with the Hamlin Claim.

The issue here is what the policy means by "personal profit or advantage to which the Insured is *not legally entitled*[.]" Id. (emphasis added). Despite Hamlin's assertion that the profit or advantage must be in and of itself illegal, the plain language reveals that "not legally entitled" is not the same as "illegal." *See Jarvis Christian Coll. v. Nat'l Union Fire Ins. Co.*, 197 F.3d 742, 749 (5th Cir. 1999) ("'Not legally entitled' simply is not synonymous with 'illegal.' The two have quite different meanings, with 'illegal' involving a greater degree of misconduct.").[4]

---

[4] To illustrate the difference, the *Jarvis* court included a useful hypothetical: "For example, a bank customer who receives an erroneous credit on his monthly statement is not 'legally entitled' to keep the mistaken deposit, since the bank or another customer has a superior right to that money; however, that customer is not guilty of illegal or illicit activity." *Jarvis*, 197 F.3d at 749 n.8. Similarly, if a client mistakenly transferred $1 million to Blackburn for a transaction instead of $100,000, Blackburn would not be "legally entitled" to the extra $900,000, and Navigators would not have a duty to indemnify Blackburn for the extra $900,000 if he kept the money and subsequently lost it through mismanagement of his personal finances.

8 – OPINION AND ORDER

The facts of *Jarvis* are instructive here. In *Jarvis*, the chairman of a community college convinced the board of trustees to invest $2 million in a local finance company without revealing that he held a 49% ownership interest, or that the company was undercapitalized with a negative net worth. *Id.* at 744. The company only secured the loan with a promissory note. *Id.* After the investment failed, the community college won a judgment against the chairman for his breach of fiduciary duty to the college, but the chairman failed to pay. *Id.* at 745. The college then filed a lawsuit against its insurance company seeking a declaratory judgment as to coverage under the errors and omissions policy. *Id.*

The Fifth Circuit concluded that the chairman had gained a profit or advantage by steering $2 million into a company in which he held a 49% stake, even though he and the company both eventually became insolvent. *Id.* at 747. The court also concluded that by breaching his fiduciary duty to the college, the chairman was not legally entitled to the profits he reaped, as evidenced by the judgment against him. *Id.* at 749. ("This indicates that a fiduciary is not legally entitled to any profit or advantage he gains as a result of a breach of duty or trust.").

The *Jarvis* case is analogous to the Hamlin Claim. Similar to how the chairman convinced the college to invest in his company without revealing that the company was undercapitalized and running a negative balance, Blackburn convinced Hamlin to invest with him without disclosing his troubled financial status. Like the loan to the chairman's company, the loan Hamlin made to Blackburn was secured only by a promissory note with no collateral. Just like the college in *Jarvis*, Hamlin filed suit against Blackburn for his breach of fiduciary duty and failure to repay the loan, which Blackburn admitted he had no prospect of repaying.[5]

---

[5] *See* ECF No. 19; Ex. O, Blackburn Deposition, p. 9. "Q: Are you solvent or insolvent now? A: I'd say now I'm probably insolvent. Q: You're not current on your obligations to Ms. Hamlin now? A: No. Q: Is there any

9 – OPINION AND ORDER

Most importantly, like the money the chairman steered to his company in *Jarvis*, the money that Blackburn mismanaged in the Hamlin Claim was not in and of itself illegal. If the plain language of Blackburn's policy read, "any personal profit or advantage that is inherently illegal," then Hamlin would prevail in this case. However, the policy says "any personal profit or advantage to which the Insured is not legally entitled."

Once Blackburn defaulted on the promissory notes, Blackburn was no longer legally entitled to the $660,000 that Hamlin had lent him. In fact, the entire premise of Hamlin's underlying lawsuit was that Blackburn was in possession of her money, to which he was not legally entitled. Regardless of whether the claim is couched as a breach of contract or a breach of fiduciary duty, Hamlin's remedy is for Blackburn to repay her the money she had lent him. If Blackburn were still legally entitled to that money, then Hamlin's underlying lawsuit would fail.

The case Hamlin cites for the proposition that the profit or gain must itself be illegal is easily distinguishable. *See Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp. 2d 376, 400 (D. Del. 2002). In *Alstrin*, the policy at issue was a directors and officers plan that specifically covered claims of securities fraud, which are among the most common claims filed against directors and officers. *Id.* at 398. As a result, the court reasoned:

> Almost all securities fraud complaints will allege that the defendants did what they did in order to benefit themselves in some way. If such an allegation were sufficient to invoke the protections of [the Personal Profit Exclusion], the broad coverage for "Securities Claims" provided by the National Union policy would be rendered valueless by this exclusion.

*Id.* at 400. The court determined that the exclusion "is inapplicable to illegalities such as securities misrepresentation to which a private gain might be incidental." *Id.* As a result, the

---

reasonable prospect of Ms. Hamlin receiving the return of her principal that she's loaned to you over the years? A: Not now. Not right now."

court concluded that the proper inquiry must focus on whether the elements of the cause of action require that the insured gain a profit or advantage to which he was not legally entitled. *Id*.

The policy in the Hamlin claim, however, does not cover securities fraud. In fact, the policy specifically excludes protection for "any Insured while involved in the bartering, purchase or sale of securities, insurance products or other investment products." ECF No. 1; Ex. 1, Sec. III.I. The *Alstrin* court's concern about the exclusion swallowing the policy does not apply here. Furthermore, Blackburn's private gain was not incidental to the underlying cause of action. To the contrary, Blackburn's private gain was the underlying cause of action. Whether Hamlin calls it a breach of contract or a breach of fiduciary duty, the entire basis for Hamlin's initial complaint is that Blackburn failed to repay her $660,000, to which he was no longer legally entitled. Hamlin cannot escape the Personal Profit Exclusion by inserting a breach of fiduciary duty claim that is based on the same underlying facts but omits any reference to Blackburn's profit or advantage. *See Freeman Investments, L.P. v. Pacific Life Ins. Co.*, 704 F.3d 1110, 1115 (9th Cir. 2013) ("Because we look to the substance of the allegations, plaintiffs cannot avoid preclusion through artful pleading that removes the covered words . . . but leaves in the covered concepts.") (internal quotations omitted).

To the extent the terms and conditions of the policy are still ambiguous, the court considers the terms and conditions in the particular context used and then, if necessary, in the context of the policy as a whole. *Hoffman*, 313 Or. at 470. Hamlin insists that the Personal Profit Exclusion should not apply because there are no allegations of fraud, theft, or any other illicit activities. Within the particular context of the "EXCLUSIONS" section, however, the policy already contains a separate exclusion for claims "arising out of any dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by the Insured." ECF No. 1; Ex. 1,

11 – OPINION AND ORDER

Sec. IV.A. If Hamlin's position were correct, then the Personal Profit Exclusion would be entirely subsumed by Sec. IV.A., which is contrary to Oregon law that "parties to an insurance contract do not create meaningless provisions." *Hoffman*, 313 Or. at 472.

In considering the policy as a whole, this Court notes that Blackburn purchased an insurance policy that provides coverage for professional accounting malpractice. The policy does not provide coverage for Blackburn's personal debts. As mentioned previously, if Blackburn had negligently advised Hamlin to invest with an insolvent third party, Navigators would likely have a duty to indemnify under those circumstances. However, Blackburn negligently advised Hamlin to loan him money directly.

The fact that Hamlin thought Blackburn was merely an intermediary to help invest her money with a third party is immaterial because courts examine the policy language "from the perspective of the ordinary purchaser of insurance." *N. Pac. Ins. Co.*, 200 Or. App. at 478. Hamlin may not have known that her loan was a personal debt, but Blackburn did, and Blackburn is the insured. Neither Blackburn, nor any other reasonable insured, could expect to borrow $660,000 dollars, lose all of it through the mismanagement of his personal finances, then turn to Navigators and demand $660,000 more. The parties could not reasonably have intended for the policy to provide coverage in a situation like this, therefore Navigators has no duty to indemnify Blackburn in connection with the Hamlin Claim.

## II. DUTY TO DEFEND

The duty to defend is broader than the duty to indemnify. *Sch. Dist. v. Mission Ins. Co.*, 58 Or. App. 692, 696 (1982). If there is a possibility that the policy covers the claim, the duty to defend arises. *Id*. Courts look at whether the complaint, without amendment, could impose liability under the policy. *Id*. at 696-97 (quoting *Ferguson v. Birmingham Fire Ins.*, 254 Or. 496,

12 – OPINION AND ORDER

507 (1969)). If so, the insurer has a duty to defend the insured. "Any doubts regarding coverage are resolved in favor of the insured." *Id*. at 697.

### A. Professional Services

In her initial complaint, Hamlin alleged breach of contract because Blackburn failed to pay the accruing interest on the promissory notes. ECF No. 1; Ex. 2, p. 2. Hamlin also alleged breach of fiduciary duty and claimed, "Defendant breached his fiduciary duty to Plaintiff by inducing her to loan the subject funds to him, knowing he lacked the capacity to repay the loans." *Id*. Hamlin's prayer for relief, under either claim, asked for $660,000 with interest.

Hamlin insists that the breach of fiduciary duty claim is sufficient to trigger the duty to defend because a fiduciary breach in this context necessarily requires a professional relationship, which therefore implies the performance of professional services. As explained above in *PMI Mortgage*, *Opie*, and *Namesnik*, the Ninth Circuit has repeatedly rejected that argument. The proper focus is on the conduct of the insured. Blackburn's conduct, as laid out in the complaint, was that he induced Hamlin to loan him money, secured by promissory notes, knowing he lacked the capacity to repay the money. Blackburn's conduct at issue, as pled in the complaint, all took place while he was involved in the sale of an investment product, which is not part of his "professional services."

Hamlin also argues that the elements of the cause of action for breach of fiduciary duty do not require factual allegations regarding the performance of professional services, so this court is limited to looking only at the elements of a breach of fiduciary duty. This argument fails for two reasons. First, as mentioned above, the Ninth Circuit instructs courts to "look at the substance of the allegations," so Hamlin cannot get around the professional services requirements "through artful pleading that removes the covered words . . . but leaves in the

13 – OPINION AND ORDER

covered concepts." *Freeman*, 704 F.3d at 1115. If Hamlin's argument were correct, any plaintiff who has a fiduciary relationship with the insured could always insert an additional claim in his or her complaint for breach of fiduciary duty, and the duty to defend would automatically arise. The plaintiff would never need to prove that the insured's conduct falls under the policy, and the insurer would never have the opportunity to prove an applicable exclusion.

Second, the complaint in the Hamlin Claim included factual allegations that prove Blackburn did not act within the scope of his professional services. By looking at the complaint, without amendment, this Court can see that Blackburn induced Hamlin to invest money directly with him though the sale of an investment product, which is specifically not covered by the policy. The elements of a breach of fiduciary duty, if pled differently, may not have called into question Blackburn's performance of professional services, but the complaint filed in this case demonstrates that Blackburn's conduct does not give rise to a duty to defend based on the language in the policy.

### B. Personal Profit Exclusion

Based on the allegations within the four corners of the complaint, Hamlin lent Blackburn $660,000, which he either failed to repay or already knew he could not repay. As a result, Blackburn gained a personal profit or advantage of $660,000. Assuming the allegations in Hamlin's complaint are true, Blackburn defaulted on his promissory notes, or breached his fiduciary duty, and was legally obligated to pay Hamlin the full $660,000 with interest. Which is to say, Blackburn was no longer legally entitled to that money. Under any reasonable interpretation of the policy and the complaint, the Personal Profit Exclusion applies, and Navigators has no duty to defend Blackburn in connection with the Hamlin Claim.

## CONCLUSION

The Hamlin Claim comes before this Court under very sad circumstances, and I am mindful of the human element underlying any cause of action. However, Blackburn purchased professional malpractice insurance that does not afford coverage for his personal debts, so Navigators has no duty to defend or indemnify Blackburn in connection with the Hamlin Claim. Navigators' motion for summary judgment, ECF No. 16, is GRANTED.

IT IS SO ORDERED.

DATED this 10th day of March, 2015.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge

15 – OPINION AND ORDER